# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| GARY S. WADE, pro se, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-cv-3715 (FLW) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL COLANER, et al. | : | |
| | : | **OPINION** |
| Defendants. | : | |
| _____ | : | |

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion for Summary Judgment by Defendants Gerald M. Turning and the Borough of Tinton Falls (collectively "Tinton Falls Defendants") to dismiss pro se Plaintiff Gary S. Wade's ("Plaintiff") Complaint. Tinton Falls also moves for Summary Judgment on its counterclaim against Plaintiff for reimbursement of wages paid while Plaintiff was suspended from his employment as a Tinton Falls police officer.  In addition, Defendants Michael Colaner and David Ryan (collectively "State Defendants") move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff alleges that State Defendants violated his Fourth and Fourteenth Amendment rights when they used excessive force in effecting his arrest and subsequently refusing to call for an ambulance to treat his injuries. Additionally, Plaintiff alleges that Tinton Falls Defendants violated his Loudermill rights under the Fourteenth

Amendment when they did not offer him a pre-suspension hearing.[1]  For the reasons that follow, the Court denies State Defendants' Motion to Dismiss Plaintiff's excessive force claim but dismisses Plaintiff's deliberate indifference claim.  Further, the Court grants the Tinton Falls Defendants' Motion for Summary Judgment on Plaintiff's claims.   In addition, the Court grants the Tinton Falls' Motion for Summary Judgment as to its counterclaim against Plaintiff.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A. Construing the Record for the Purposes of Evaluating Defendants' Motions

Since State Defendants move pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take the allegations as set forth in Plaintiff's Complaint as true. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).   However, the disputed incident which gives rise to Plaintiff's claims against State Defendants, Plaintiff's arrest, and subsequent criminal charges, have been the subject of criminal proceedings before a municipal court, whose decision was later affirmed by both the New Jersey State Superior Court and the Appellate Division.  At the municipal court and New Jersey Superior Court proceedings, a videotape of the incident was reviewed, and findings were made as to what actually occurred.  As a result, this Court must resolve the inherent tension in construing the record of the previous court proceedings together with Plaintiff's Complaint in the context of the general standard of review on a 12(b)(6) motion.

First, the Court will not draw inferences in Plaintiff's favor that are inconsistent with the events depicted in the videotape of the incident. See Scott v. Harris, 127 S.Ct. 1769, 1776 (2007). Second, in accordance with Heck v. Humphrey, 512 U.S. 477 (1994), see infra, the Court will not draw inferences in Plaintiff's favor that would necessarily negate the findings of the municipal

---

[1]The Court notes that Plaintiff has filed no opposition to the present Motions.

court, the affirmance of the New Jersey Superior Court and the Appellate Division. See Ference v. Township of Hamilton, 538 F. Supp. 2d 785 (D.N.J. 2008). The Court will construe the allegations in Plaintiff's Complaint as true only insofar as they do not undermine the basis of the municipal court's findings.

Third, although not argued by the parties, Heck is applicable to Plaintiff's underlying convictions. This Court and others, have applied Heck to §1983 claims that would impugn the validity of a conviction under a municipal ordinance. See Ference, 538 F. Supp. 2d at 790; Cordova v. City of Reno, 920 F.Supp. 135, 137 (D. Nev. 1996) (plaintiff's §1983 claim barred by Heck because it would "necessarily imply the invalidity of [plaintiff's] conviction under th[e] ordinance"); Acevedo v. City of O'Fallon, Docket No. 07-859, 2007 WL 1541881, at *3 (E.D. Mo. May 24, 2007) (applying Heck to bar plaintiff's claims based upon violations of a municipal ordinance).

Thus, while this Court is generally required to take Plaintiff's allegations as true on a motion to dismiss, the Court will construe Plaintiff' Complaint in a manner consistent with the prior court proceedings and Plaintiff's criminal conviction.

**B. Factual Background**

From January 4, 1999 through November 8, 2006, Plaintiff was employed as a police officer for the Borough of Tinton Falls. Tinton Falls Defendants' Statement of Undisputed Material Facts ("Tinton Falls SOF") ¶1. On the morning of August 17, 2004, Plaintiff was driving an unmarked police car on his way to work. Id. ¶¶ 5-6. As Plaintiff was proceeding northbound on the Garden State Parkway, he was pulled over by State Defendants Michael Colaner and David Ryan, both New Jersey State Troopers. Id. ¶7. Colaner later testified that he pulled Plaintiff over

3

because Plaintiff was driving over 90 miles per hour. Id. ¶8. After approaching Plaintiff's car and initiating contact, State Defendants claim Plaintiff was bellicose and unresponsive, unwilling to answer their questions and provide proper identification. Id. ¶9. Specifically, Plaintiff refused to tell State Defendants whether he was a police officer or whether he was in possession of a firearm. Id. In addition, Plaintiff demanded that a supervisor be called to the scene because the State Defendants had pulled Plaintiff over within the municipal limits of Tinton Falls. Certification of Arthur Thibault ("Thibault Certif."), Exh. E, New Jersey State Police Investigative Report.[2]

At this point, State Defendants determined that Plaintiff's behavior warranted that he be arrested for obstruction of the administration of law and resisting arrest. Tinton Falls SOF ¶ 12. Plaintiff, however, refused to cooperate when State Defendants asked Plaintiff to lay on the ground, at which point State Defendants both wrestled Plaintiff to the ground. Thibault Certif., Exh. E. In addition, State Defendants administered pepper spray to the right side of Plaintiff's head. Id. After his arrest, Plaintiff was transported to the Holmdel State Police barracks, where he was met by Defendant Chief Turning and the president of the Police Benevolent Association ("PBA") President for Local 251, Chris Camillieri. Tinton Falls SOF ¶ 11. As a result of his arrest, Plaintiff was charged with obstruction of administration of law and resisting arrest.

─────────────────────

[2]Plaintiff's account of what transpired during August 17, 2004 provides a stark contrast to State Defendants' Investigative Report. See Pl.'s Compl. However, as discussed supra, the Court will only consider facts as they are consistent with the prior court proceedings and rulings rendered. Here, Plaintiff's account of what occurred prior to his arrest has been discredited by the New Jersey Superior Court. Indeed, in its ruling, that court stated that after viewing the video of the incident, the court was inclined to accept State Defendants' account of what transpired, effectively dismissing Plaintiff's recollection of events. Thibault Certif., Exh. X, New Jersey Superior Court Ruling. Accordingly, the Court need not recount facts inconsistent with these findings.

Tinton Falls SOF ¶12.  Plaintiff was also issued a motor vehicle violation for careless driving.  Plaintiff was subsequently released from custody on August 17, 2004.  Id. ¶13.  Upon his release, Plaintiff was informed by Turning that effective immediately, Plaintiff was being suspended with pay. Id.

Plaintiff made no attempt to contact Turning or any other official with the Borough of Tinton Falls between August 17 and September 16, 2004. Id. ¶16.  By memo dated September 16, 2004, Turning informed Plaintiff that effective September 18, 2004, Plaintiff was to be suspended without pay as a result of his August 17th arrest.  Id. ¶17.  The memo stated "The Borough of Tinton Falls is changing your status from suspended with pay to suspended without pay effective September 18, 2004.  A copy of a Preliminary Notice of Discipline is attached along with the specifications to the Departmental Charges that will be addressed immediately following the presentation to the Jury or trial." Id.  Importantly, the Preliminary Notice of Discipline accompanying the memo gave Plaintiff ten days within which Plaintiff could request a hearing to contest his changed status.  Id. ¶18.  However, Plaintiff admitted that he never contacted Turning to schedule a hearing.  Id. ¶19; Thibault Certif., Exh. G, Deposition of Gary S. Wade 300:21-22.

On October 19, 2004, the Monmouth County Prosecutor's Office presented a proposed agreement regarding the pending charges against Plaintiff.  In sum, the State would dismiss the charges if Plaintiff acquiesced to a psychological fitness for duty examination and accepted a six month suspension without pay, retroactive to his August 17th suspension.  Tinton Falls SOF ¶21.  Although Turning was open to such an offer, Plaintiff rejected the proposed agreement.  Id. ¶¶22-23.  On April 12, 2005, a grand jury chose not to indict Plaintiff for felony resisting arrest and the obstruction of administration of law charges.  Id. ¶24.  The charges were ultimately

5

downgraded to disorderly persons offenses, obstruction of administration of law and careless driving, and sent to the Freehold Borough Municipal Court.  Id.  As a result of the grand jury's actions, Plaintiff was informed by memo dated April 14, 2005 that his suspension status was changed again, from without pay to pay effective April 12, 2005.  Id. ¶¶25-26.  However, the memo informed Plaintiff that he would only be permitted to return to work after he reported for a psychological fitness for duty examination.  Id.

On May 5, 2005, Dr. Betty McLendon examined Plaintiff and determined that he was unfit for duty.  Id. ¶28.  Upon receiving the results of McLendon's examination, Tinton Falls informed Plaintiff by a letter dated June 15, 2005, that he would be placed on unpaid Family and Medical Leave. Id. ¶29.   The letter urged Plaintiff to use his fourteen weeks of accrued time to retain pay status during this imposed hiatus.  Id.  Plaintiff agreed, and beginning on July 3, 2005, Plaintiff began utilizing his accrued time in order to continue receiving pay.  Id. ¶30.  On December 8, 2005, Plaintiff was informed that he would remain on medical leave until he was determined to be fit for duty through a subsequent fitness for duty examination.  Id. ¶35.

On March 9, 2006, Plaintiff was convicted in municipal court of obstruction of the administration of law[3] and careless driving charges.  Id. ¶38.   Plaintiff appealed this conviction

---

[3]The Obstruction of Administration of Law statute,  N.J.S.A. 2C:29-1, provides, in part:

> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.

> An offense under this section is a crime of the fourth degree if the actor obstructs the detection or investigation of a crime or the prosecution of a person for a crime, otherwise it is a disorderly persons offense.

to the New Jersey Superior Court.  Sometime in October 2006, Tinton Falls initiated an internal investigation into Plaintiff's alleged conduct during the August 17th incident.  Id. ¶39.  The investigation yielded disciplinary charges, which sought Plaintiff's termination from his employment.  Id. ¶40.  Plaintiff was served with notice of these disciplinary charges that also informed him that he could request a hearing by November 10, 2006.  The New Jersey Superior Court, Monmouth County Vicinage, affirmed the lower court conviction on November 8, 2006. Id. ¶41.  In doing so, the Superior Court Judge accepted the testimony of State Defendants as a more accurate representation of what transpired before Plaintiff's arrest.  Thibault Certif., Exh. X, New Jersey Superior Court Ruling.  In accordance with N.J.S.A. 2C:59-2, the Superior Court ordered that Plaintiff forfeit his public employment with Tinton Falls, thereby rendering Tinton Fall's disciplinary charges moot.  Tinton Falls SOF ¶41.

On August 1, 2006, Plaintiff initiated this action in the United States District Court for the District of New Jersey.  On October 25, 2007, Defendants Tinton Falls and Turning filed a Motion for Summary Judgment.  However, soon after the filing of these motions, Plaintiff's counsel sought withdrawal from the case at bar.  In an Order dated November 5, 2007, United States District Magistrate Judge, the Honorable Tonianne J. Bongiovanni, ordered that "[p]laintiff shall retain new counsel on or before November 30, 2007 or else Plaintiff will be deemed pro se."  The Letter Order further stated that "the Court [would] reset the summary judgment schedule once [the] new counsel issue [was] resolved."  However, Plaintiff never retained new counsel and consistent with the November 5th order, Judge Bongiovanni ordered

that Plaintiff  be deemed pro se on December 3, 2007. In addition, Chief Judge Brown reset the

motion schedule, requiring Plaintiff to file an opposition by January 8, 2008 to both motions for

summary judgment.  Plaintiff never filed an opposition to either motion.  On May 27, 2008,

Judge Bongiovanni held an in-person conference with all parties.  At this conference, Plaintiff

informed the Court of a change of residence and provided his new address. Notwithstanding, by

Order dated June 13, 2008, United States District Judge, the Honorable Garrett E. Brown

transferred the matter to this Court.  Subsequently, this Court administratively terminated the

pending motions.  On June 23, 2008, Tinton Fall Defendants reinstated their Motion for

Summary Judgment, relying on the moving papers and exhibits previously submitted.  State

Defendants too, reinstated their Motion to Dismiss, on June 24, 2008. However, Plaintiff never

filed any opposition to this motion and on January 23, 2009, this Court notified Plaintiff that it

would consider the Motions unopposed.  For the reasons that follow, State Defendants' Motion

to Dismiss is granted with respect to Plaintiff's deliberate indifference claim and denied with

respect to Plaintiff's excessive force claim.  Further, Tinton Falls Defendants' Motion for

Summary Judgment is granted and Plaintiff's Loudermill claim is dismissed.  Finally, Tinton

Falls' Motion for Summary Judgment on its counterclaim is granted.

As of May 27, 2008, Plaintiff has responded to no letters or inquiries from this Court.   The

Court notes that Plaintiff bears the responsibility to inform this Court if he has again changed his

address.   See L. Civ. R. 10.1. As such, the Court assumes that Plaintiff has received the motion

papers and this Court's letters; no correspondences have been returned to the Court as

undeliverable.  It has been almost a year since Plaintiff has contacted or filed papers with this

Court.  Consequently, the Court questions whether Plaintiff remains interested in prosecuting this

case. If he is so interested, the Court directs Plaintiff to inform the Court of his intention to do so in twenty days, as well as provide the Court with his proper address; otherwise, his remaining claim will be dismissed.

## II. DISCUSSION

### A. Standard of Review for Tinton Falls Defendants' Motion for Summary Judgment

Summary judgment is appropriate where the Court is satisfied "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 330 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying

9

facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citations omitted).

However, if a non-movant fails to oppose the motion, Rule 56(e) provides that the Court may grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.3d 168, 175 (3d Cir. 1990); Damiano v. Sony Music Entm't, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when the movant is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.  When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. IRS, No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assocs., 922 F.2d at 175).  Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. March 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir. 1988); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D.Pa. June 20, 2000).

**B. Standard of Review for State Defendants' Motion to Dismiss**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips,

515 F.3d at 233 (citation and quotations omitted). Recently, in <u>Bell Atlantic Corporation v.</u> <u>Twombly</u>, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u> at 1968 (quoting <u>Conley</u>, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. As the Third Circuit has stated, "[t]he Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 127 S.Ct. at 1965).

When a plaintiff fails to oppose a motion to dismiss for failure to state a claim, a court is still obligated to address the motion on its merits; thus, this Court must determine whether Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). <u>West v. American Honda Motor Co.</u>, No. 08-0700, 2008 WL 4104683, at *2 (D.N.J. Aug. 28, 2008) (citing <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (3d Cir.1991)).

### a. The Court's Consideration of Submissions Outside the Pleadings

A court generally may not consider matters outside the pleadings when ruling on a motion to dismiss.  However, the court may rely on documents "integral to or explicitly relied upon in the complaint."  <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 184 F.3d 280, 292-93 (3d Cir.1999).  In

addition, public documents and prior judicial proceedings may be considered in deciding a motion to dismiss. See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir.1999); see also Herring v. United States, 2004 WL 2040272, at *7 (E.D.Pa. Sept.10, 2004). When relying on such documents, the court need not convert the motion to dismiss into one for summary judgment.  In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d at 292-93.

Here, State Defendants have submitted for this Court's consideration transcripts of the New Jersey Superior Court's affirmance of the municipal court decision and a copy of the Appellate Division's opinion upholding the lower court rulings.  In addition, Plaintiff references his criminal trial proceedings, Pl.'s Compl. ¶ 55, and explicitly describes the events depicted in the video that captured his August 17th arrest.  Accordingly, the Court shall consider State Defendants' submission of court documents and the videotape[4] of Plaintiff's arrest but will still consider State Defendants' Motion pursuant to Fed. R. Civ. P. 12(b)(6).

**C. 42 U.S.C. § 1983**

Plaintiff's claims arise under 42 U.S.C.§ 1983.  Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. . .subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

42 U.S.C. § 1983. The law does not create any substantive rights but rather provides "an avenue

---

[4]The Court requested a copy of the videotape from State Defendants.  State Defendants provided this Court with a copy of the videotape and the transcript of the August 17th incident referred to in the criminal court proceeding.

of recovery for the deprivation of established federal constitutional and statutory rights." Salley v. Rodriguez, No. 07-4914, 2008 WL 65106 at *4 (D.N.J. Jan.4, 2008); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d. Cir.1995). To establish a § 1983 claim, a plaintiff must demonstrate that the alleged conduct was committed by "(1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States." Stahl v. Main, No. 07-4123, 2008 WL 2446816, at *3 (D.N.J. June 16, 2008).

**D. Whether Heck v. Humphrey bars Plaintiff's § 1983 claims against State Defendants**

Plaintiff alleges, inter alia, that State Defendants (1) used excessive force in effectuating Plaintiff's arrest; and (2) denied Plaintiff medical treatment.  In response, State Defendants contend the Rooker-Feldman doctrine bars Plaintiff's 1983 claims.[5]

At the onset, the Court must decide whether Plaintiff's 1983 claims for excessive force and deliberate indifference to a serious medical need are barred under Rooker-Feldman or Heck.  The Rooker-Feldman doctrine precludes this Court from exercising jurisdiction over cases brought by a "state-court loser [ ] complaining of injuries caused by [a] state-court judgment[ ] rendered before the district court proceedings commenced and inviting district court review and rejection of [that] judgment[ ]." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). More simply stated, Rooker-Feldman bars a federal proceeding when "entertaining the federal court claim would be the equivalent of an appellate review" of the state judgment. Allah

---

[5]State Defendants also argue that res judicata and collateral estoppel bar Plaintiff's §1983 claims. However, as stated supra, the issues raised by Plaintiff §1983 claims, excessive force and failure to provide medical treatment, do not implicate the factual or legal issues encompassed in Plaintiff's criminal proceedings, the adjudication of which would not disturb the validity of Plaintiff's conviction or the reasoning of the state courts.

v. Whitman, No. 02-4247, 2005 WL 2009904, at *4 (D.N.J. Aug. 17, 2005) (quoting FOCUS v. Alleghany County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir.1996)).  Thus, a cause of action asserted in federal court that ultimately seeks to vacate the decision or reasoning of a state court is barred under Rooker-Feldman.  Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419-20 (3d Cir. 2001) (Rooker-Feldman bars those claims that "[are] inextricably intertwined with [the] state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.").  However, Rooker-Feldman generally does not act as a bar to a §1983 claim that may challenge the validity of a plaintiff's underlying state criminal conviction. See Allah v. Whitman, 2005 WL 2009904, at *4 (rejecting Rooker-Feldman as a bar to a plaintiff's excessive force claim).[6]

Instead, the Court finds that the doctrine enunciated in Heck v. Humphrey is applicable in the case at bar.   In Heck, the Supreme Court held, inter alia,

> that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,  a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

---

[6]This is not to say that the nature of the state court proceedings, whether criminal or civil, that preceded Plaintiff's claims in district court alter the applicability of the Rooker-Feldman doctrine. To the contrary, the general rule that a district court may not hear an appeal from a state court still applies unless explicitly authorized by Congress.  See Exxon Mobil, 544 U.S. at 292 n.8 (finding that Congress may explicitly authorize district courts to review state court judgments, e.g., habeas review of state court convictions pursuant to 28 U.S.C. 2254(a)).  The Court notes, however, that § 1983 claims asserted in light of an underlying criminal conviction are generally construed under Heck.  Regardless, the Court finds that Plaintiff's §1983 claims do not seek to appeal his underlying criminal convictions that were later affirmed by the Appellate Division.

14

Heck, 512 U.S. at 486-87.  Thus, the central inquiry is whether the claims asserted by the

plaintiff would "necessarily imply the invalidity of his conviction." Wallace v. Kato, 549 U.S.

384, 398 (2007) (Stevens, J., concurring) (quoting Heck, 512 U.S. at 486-87).

When construing excessive force claims in light of a criminal conviction, the Third Circuit

has widely held that an underlying criminal conviction does not necessarily bar a plaintiff's

excessive force claim.  For instance, in Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997), the

Third Circuit held that a plaintiff convicted of resisting arrest could maintain a § 1983 claim

alleging that the officers who arrested him used excessive force.[7]  The Nelson court held that

although the officers were permitted to use some force to effect the plaintiff's arrest, the

plaintiff's claim for excessive force could be successful without invalidating the underlying

conviction for resisting arrest.  Id. at 145-46.  As stated by the Nelson court: "the fact that

[defendant] was justified in using 'substantial force' to arrest [plaintiff] does not mean that he

was justified in using an excessive amount of force and thus does not mean that his actions

effectuating the arrest necessarily were objectively reasonable."  Id. at 146; Allah, 2005 WL

2009904, at *4 ("Defendants argue that because Plaintiff seeks remedy for a constitutional

violation a verdict in his favor would necessarily undermine his state court conviction. . . .This

contention is ludicrous.  There is simply no logical argument that would allow a court to

_____

[7]The Court notes that in limited circumstances, courts have found that Heck bars certain
excessive force claims.  For instances, in Jennings v. Fetterman, the Third Circuit affirmed the
district court's decision to apply Heck to a plaintiff's excessive force claim. 197 Fed.Appx. 162
(3d Cir. 2006).  In Jennings, the plaintiff was convicted of attempted homicide of a police officer
who subsequently shot the plaintiff. Id. at 164.  In affirming the district court, the Third Circuit
noted that "Jennings' attempted homicide conviction necessarily meant that the jury had rejected
Jennings' theory that he had shot at [the police officer] in self defense. . . .a judgment in favor of
Jennings on his excessive force claim would contradict this jury finding and, by logical
extension, invalidate the attempted homicide conviction."  Id.

conclude that a lawful conviction for drug possession would be called into question by a finding that excessive force was unlawfully used at the time of his arrest.").

Likewise, the district court in <u>Hammock v. Borough of Upper Darby</u> held that a plaintiff found guilty of obstruction of the administration of law who was also acquitted of resisting arrest could proceed with her excessive force claim.  No. 06-1006, 2007 WL 3232115, at *3 (E.D. Pa. Oct. 31, 2007).  Particularly compelling is the <u>Hammock</u> court's reasoning, in which it stated, "[w]e do not see how such a finding [in the plaintiff's favor] would be compromised if [the plaintiff] were to prevail on her excessive force claim, since holding otherwise would imply that a police officer could constitutionally pistol-whip any person who physically interfered with his duties, no matter how inconsequentially.  Our conclusion is bolstered by the fact that [the plaintiff] was <u>acquitted</u> of both simple assault. . .as well as resisting arrest."  <u>Id.</u> at *3 n.5.

Here, Plaintiff was acquitted of resisting arrest but convicted of obstruction of the administration of law charges.  Thus, Plaintiff's excessive force and medical assistance claims do not present a collateral attack on the underlying conviction, and as such, are not barred by either <u>Rooker-Feldman</u> or <u>Heck</u>. To the contrary, the fact that Plaintiff was acquitted of resisting arrest militates against <u>Heck</u> barring Plaintiff's excessive force claim.  Accordingly, Plaintiff's claims against State Defendants are not barred by <u>Heck</u>. Thus, the Court will turn to whether Plaintiff's Complaint adequately alleges § 1983 claims for excessive force and failure to give medical treatment.  Again, however, in construing Plaintiff's claims, the Court is mindful that Plaintiff's Complaint must be construed in a manner consistent with the state court criminal proceedings. <u>Cf.</u>  <u>Nelson</u>, 109 F.3d at 146 ("We add an important caveat. The proceedings in the district court must go forward on the basis that [plaintiff's] conviction was valid . . . [I]f this case reaches trial,

16

the trier of fact must be aware that [defendant] was justified in using 'substantial force' in arresting [plaintiff.] Otherwise there would be a danger that in returning a general verdict against [defendant] predicated on a finding that he used excessive force, the trier of fact might base its verdict on findings not consistent with the conclusion the jury reached in the criminal case.").

### E. Plaintiff's Excessive Force Claim

Plaintiff alleges that State Defendants used excessive force when they arrested him for resisting arrest, obstruction of the administration of law, and careless driving.  Specifically, Plaintiff alleges that State Defendants' use of pepper spray and their actions in hitting him in the back of the head constitute excessive force.  The use of excessive force can constitute an unlawful "seizure" under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). When construing an excessive force claim, this Court must consider whether the officer's use of force was objectively reasonable under the circumstances, regardless of the official's underlying motive or intentions. Graham, 490 U.S. at 397.  In Graham, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) (quoting Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (finding an officer was entitled to qualified immunity on excessive force claim "'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances.'" ).  In addition, the Third Circuit has noted other relevant factors including "the duration of the [officer's] action,

whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  Sharrar v. Felsing, 128 F.3d 822 (3d Cir. 1997).

When weighing these factors, courts should evaluate the officers' conduct from the officers' vantage point at the time of the incident; thus "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' is constitutionally unreasonable." Mayer v. Gottheiner, 382 F. Supp. 2d 635, 649  (D.N.J. 2005) (quoting O'Connor, 490 U.S. at 396)).  In other words, "reasonableness must embody allowance for the fact that 'police officers are often forced to make split-second judgments-circumstances that are tense, uncertain and rapidly evolving.'"  O'Connor, 490 U.S. at 396-97.

In the instant matter, taking Plaintiff's Complaint as true, and upon review of the videotape documenting the August 17th incident, Plaintiff sufficiently pleads an excessive force claim.[8] Here, the crimes at issue, careless driving and the obstruction of the administration of law, are non-violent crimes not normally associated with the use of physical force to restrain a suspect. Although Plaintiff was non-compliant, and at times clearly defiant, nonetheless, State Defendants may use no greater force than is reasonable under the circumstances to effect his arrest. Moreover, at the time the State Defendants used pepper spray and struck Plaintiff on the back of his head, the State Defendants had removed Plaintiff from his car, minimizing any danger Plaintiff posed at that moment.  State Defendants have not articulated a valid reason for striking Plaintiff or forcing him to lie on the ground when a disarmed Plaintiff was in the secure custody

---

[8]The Court notes that qualified immunity was not raised by State Defendants in the consideration of the current motion.  If Plaintiff informs this Court that he wishes to pursue his remaining claim, State Defendants may raise qualified immunity on a motion for summary judgment.

of two officers.  Thus, taking Plaintiff's Complaint as true and construing his allegations in a manner consistent with the prior court proceedings, this Court will not dismiss Plaintiff's excessive force claim.

### F. Plaintiff's Deliberate Indifference Claim

Additionally, Plaintiff alleges that State Defendants ignored his pleas for medical treatment after they used pepper spray on Plaintiff's eyes and neck.  As a result, Plaintiff alleges, he was forced to writhe in pain for an indeterminate amount of time while State Defendants completed their investigation at the scene of the arrest.  Plaintiff also alleges that the incident left him with scarring on the back of his neck.

As a threshold matter, Plaintiff's deliberate indifference claims arise under the Fourteenth Amendment. See Natale v. Camden County Correctional Facility, 218 F.3d 575, 581 (3d Cir. 2003) (stating that the while the Eighth Amendment applies to a convicted prisoner's § 1983 claims for inadequate medical care, courts should construe a pretrial detainee's claim for deliberate indifference pursuant to the Fourteenth Amendment).  Notwithstanding, the Supreme Court has noted that the Fourteenth Amendment provides pretrial detainees and those arrested protections "at least as great as the Eighth Amendment protections available to a convicted prisoner."  Id. at 581 (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)). Thus, when determining whether a pretrial detainee has sufficiently plead a deliberate indifference claim, the Plaintiff must allege that he (1) suffered from a serious medical need and (2) the acts or omissions by the police officers demonstrate deliberate indifference.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  The Court will discuss each of these prongs in turn.

In Monmouth County Correctional Institutional Inmates v. Lanzaro, the Third Circuit

19

expounded on the "serious medical need" prong of the test set forth by the Supreme Court in

Estelle v. Gamble, 429 U.S. 97 (1976):

> A medical need is "serious," in satisfaction of the second prong of the Estelle test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir.1981); accord Laaman v. Helgemoe, 437 F.Supp. 269, 311 (D.N.H.1977). . . . In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. See, e.g., Archer, 733 F.2d at 16 (pregnant inmate who miscarried stated cognizable claim where she alleged that defendants intentionally delayed emergency medical aid in order to make her suffer); Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir.1980) (delay in providing oral surgery resulted in "continued and unnecessary pain and loss of teeth"), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); Laaman, 437 F.Supp. at 312 (denial of treatment may result in permanent damage or require corrective surgery); Derrickson, 390 F.Supp. at 907 (failure to perform elective surgery on inmate serving life sentence would result in permanent denial of medical treatment and would render inmate's condition irreparable).

However, the normal effects of pepper spray on a person, i.e. burning, are not of the kind to constitute a serious medical need.  Indeed, "[t]he nature of pepper spray is to cause pain that dissipates without causing serious injury."  Frederick v. Hanna, No. 05-514, 2006 WL 3489745, at *8 (W.D. Pa.  Dec. 1, 2006) (quoting Britton v. Lowndes County Sheriff's Department, No. 04-160, 2005 U.S. Dist. LEXIS 31648, at *15-16 (D. Miss. Nov. 17, 2005).

Even if this Court assumes arguendo that Plaintiff's medical needs were indeed serious, State Defendants' decision not to immediately call for an ambulance after spraying Plaintiff with pepper spray does not rise to the level of deliberate indifference.  Deliberate indifference, a "subjective standard of liability consistent with recklessness as that term is defined in criminal law," Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000),  requires the plaintiff to demonstrate that the defendants "knew that [the plaintiff] faced a substantial risk of serious harm and

disregarded that risk by failing to take reasonable measures to abate it." Mantz v. Chain, 239 F. Supp. 2d 486, 504 (D.N.J. 2002) (quoting Debro v. Roth, 1997 WL 327487, at *3 (E.D. June 13, 1997)). Thus, when considering a delay in obtaining treatment, courts should be mindful of the effects of the delay in treatment, i.e. the injury sustained by the arrestee as a result of the delay. Mantz, 239 F. Supp. 2d at 504 (quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)). Normally, police officers using pepper spray need not obtain medical treatment for an arrestee immediately and may wait until the arrestee is returned to the police station. Frederick, 2006 WL 3489745, at *8; Mantz, 239 F. Supp. 2d at 504 (finding that police officers were not deliberately indifferent to a plaintiff's medical needs when they waited an hour and a half to get an arrestee medical treatment for pepper spray burns); Davis v. Township of Paulsboro, 421 F. Supp. 2d 835, 855 (D.N.J. 2006) (holding that a police officer's decision to not let an arrestee wash out his eyes of pepper spray until reaching police headquarters was reasonable given the arrestee's behavior).

Here, Plaintiff told State Defendants that the pepper spray was painful and burned his skin, which Plaintiff alleges is evidenced by the scarring on his neck. However, Plaintiff never intimated that he was suffering from severe complications that would warrant immediate medical treatment.  Given the circumstances surrounding Plaintiff's arrest and the location, the shoulder of the Garden State Parkway, State Defendants determined that a minor injury, pepper spray burns, did not warrant the summoning of an ambulance to the scene.  That decision to delay medical treatment for Plaintiff, in and of itself, does not rise to the level of deliberate indifference. Further, Plaintiff was offered medical treatment for his pepper spray burns once he was brought into police headquarters; however, he refused. Certification of Arthur R. Thibault,

Exh. E, New Jersey State Police Investigative Report.  Indeed, the Court cannot gather why

Plaintiff would refuse medical treatment at police headquarters; if Plaintiff was in such severe

pain and discomfort that his burns required <u>immediate medical treatment</u> at the scene of his

arrest, it is unlikely the need would dissipate with time and Plaintiff would have accepted

medical assistance at police headquarters without hesitation.  In sum, Plaintiff's Complaint fails

to adequately allege either prong of the <u>Estelle</u> factors.  Accordingly, Plaintiff's deliberate

indifference claim is dismissed.

### G. Plaintiff's <u>Loudermill</u> Claim

Turning to Plaintiff's claims against Tinton Falls Defendants, Plaintiff alleges that he was

deprived of his Due Process rights when Tinton Falls Defendants failed to conduct a hearing

before September 18, 2004, the day Plaintiff was suspended without pay.[9]  In response, Tinton

Falls Defendants argue that Plaintiff declined several opportunities to defend himself and argue

that his suspension was unwarranted.  Specifically, Tinton Falls Defendants direct this Court's

attention to Plaintiff's refusal to exercise his right to a prompt hearing within ten days of initial

suspension without pay.

"The protections of the Due Process Clause apply to government deprivation of those

---

[9]The Court notes that Plaintiff's Complaint does not seem to allege that he was deprived of his
right to procedural due process in connection with his eventual termination, as the termination
occurred as a matter of court order during his subsequent appeal to the New Jersey Superior
Court.  Further, Plaintiff is not alleging that he was entitled to a pre-deprivation hearing before he
was suspended with pay on August 17, 2004.  Nevertheless, the Third Circuit has indicated that
an employer does not need to provide an employee with a pre-deprivation or post-deprivation
hearing when it suspends an employee with pay.  <u>Jerrytone v. Musto</u>, 127 Fed. Appx. 295, 301
(3d Cir. 2006).; <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 545-46 (1985)
(employers "can avoid the problem [of a pre-termination due process hearing] by suspending
with pay").

perquisites of government employment in which the employee has a constitutionally protected 'property' interest." Gilbert v. Homar, 520 U.S. 924, 928 (1997). Normally, these deprivations arise in situations where the plaintiff's employment has been terminated; nevertheless, the Supreme Court has extended these protections to disciplinary measures taken by a public employer, that fall short of termination, such as suspension with or without pay. See Id. at 929. Importantly, "[w]hen analyzing a 1983 claim alleging a state actor's failure to accord appropriate levels of procedural due process, our inquiry is bifurcated. We first must determine whether the asserted interest is encompassed within the Fourteenth Amendment's protection of life liberty, or property; if so, we then ask whether the procedures available provided the plaintiff with adequate due process." Solomon v. Philadelphia Housing Authority, 143 Fed. Appx. 447, 452 (3d Cir. 2005) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). With respect to the first inquiry, a plaintiff must demonstrate that he or she had a property interest in his public employment. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Here, the Tinton Falls Defendants acknowledge Plaintiff's protected interest in his employment as created by New Jersey statute. Accordingly, the Court turns to whether the process that Plaintiff was afforded in the case at bar protected his interest.

   Although procedural due process is a fluid concept to be addressed on a case-by-case basis, the Supreme Court has set forth three factors to guide this Court's analysis of what process was due to a public employee under the circumstances:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

Gilbert, 520 U.S. at 931-32 (quoting Mathews v. Eldridge, 424 U.S. 319, 345 (1976). In weighing the first factor, the Supreme Court has held that a suspension without pay is not a private interest on par with termination of employment.  In Gilbert, a university police officer was suspended without pay after state police arrested him on felony drug charges.  The police officer challenged his suspension on the grounds that pursuant to Cleveland Board of Education v. Loudermill, he was entitled to a hearing before his suspension was ordered.

The Court, however, rejected that argument, giving considerably less weight to the plaintiff's private interest than that of an employee who has lost his job: "[u]nlike the employee in Loudermill, who faced termination, respondent faced only a temporary suspension without pay. So long as the suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are often not affected at all."  Gilbert, 520 U.S. at 932 (emphasis in original); see also Espinosa v. County of Union, 212 Fed. Appx. 146, 155 (3d Cir. 2007) ("This is because 'lost income is relatively insubstantial" as compared to the "severity of depriving someone of the means of his livelihood.'") (quoting Gilbert, 520 U.S. at 932); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 556 (D.N.J. 2000) ("[plaintiff's] interest in maintaining his employment as a special law enforcement officer was significant, considering the fact that his termination was final.").  However, this is not to say that a suspension without pay is a deprivation afforded little concern; to the contrary, the Third Circuit has held a suspension without pay is a "deprivation of the means of the [employee's] livelihood," and as such, is a serious private interest.  Solomon, 143 Fed. Appx. at 454.

As to the second factor, courts have held that the risk of erroneous deprivation is minimal in

24

those instances where the plaintiff has already been arrested at the time of his suspension, thereby giving the employer sufficient grounds to suspend the employee.  Gilbert, 520 U.S. at 933 ("the purpose of any pre-suspension hearing would be to assure that there are reasonable grounds to support the suspension without pay.  But here that has already been assured by the arrest and the filing of charges."); Solomon, 143 Fed. Appx. at 454. Conversely, where an employee has not been arrested or formally charged with wrongdoing by law enforcement and the employee disputes the grounds for his possible suspension, the risk of erroneous deprivation is substantial. See Santiago, 107 F. Supp. 2d at 556 (finding the risk of erroneous deprivation high where the employer received information about the employee's wrongdoing from a confidential informant, whose reliability was not yet tested by the parties).

Finally, the Gilbert court recognized that the government "has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers. . . .We think. . . that the government does not have to give an employee charged with a felony a paid leave at taxpayer expense."  Gilbert, 520 U.S. at 932; see also Virgili v. Allegheny County, 132 Fed. Appx. 947 (3d Cir. 2005) (affirming district court's dismissal of a correctional officer's Loudermill claim); Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 274 (S.D.N.Y. 2005) (adopting the reasoning of Gilbert in a case involving a police officer's suspension without pay). The Court will discuss each of the factors in turn.

Balancing these factors, the Court finds, given the circumstances, Plaintiff's claim that he was deprived adequate due process fails.  First, the Court acknowledges that although the loss of income is significant, the importance of that interest is not coterminous with termination of

25

employment. Notably, the Court in Gilbert held, inter alia, that a police officer arrested and charged with criminal offenses who was later suspended without pay was not entitled to a pre-suspension hearing.  520 U.S. at 932.  Second, much like in  Gilbert where the plaintiff had already been charged and arrested on felony charges, Plaintiff was taken into custody and charged with criminal offenses. See Id.  In Loudermill, the Supreme Court noted that the purpose of a hearing before an action is taken against an employee is to ensure "there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. 545-46.  By contrast, in Solomon, the Third Circuit held that a pre-deprivation hearing was necessary before an employer could suspend the plaintiff without pay when the basis for the allegations constituting grounds for suspension came from a confidential informant.  Indeed, the Gilbert court noted the need for a pre-deprivation hearing greatly diminishes in those instances where criminal charges have been filed against an employee.  Gilbert, 520 U.S. at 932.  Thus, the Court finds that the criminal charges and Plaintiff's arrest constitute reasonable grounds for Tinton Falls Defendants' decision to suspend Plaintiff without pay.  Finally, the Court adopts the reasoning of the Gilbert court as to the importance of Tinton Falls Defendants' interest in the case at bar.  Simply put, police officers are beholden to the public, sworn to enforce the laws of the state of New Jersey and the local jurisdiction in which they are employed.  In the instance one of those officers runs afoul of the public trust, the government has a significant interest in preserving public confidence and goodwill in its police force.  Gilbert, 520 U.S. at 932. Thus, the Court finds that the extremely low risk of erroneous deprivation coupled with Tinton Falls Defendants' interest in preserving public confidence in its police force outweigh Plaintiff's private interest in his temporary loss of

his salary.

Here, the record clearly indicates that Plaintiff was provided with an opportunity to be heard if he chose to contest his suspension without pay.  Plaintiff did not taken advantage of this opportunity.  In fact, Plaintiff acknowledged receipt of the notice that permitted him to have a hearing and stated that he chose not to contact Chief Turning and request a hearing.  Moreover, the record demonstrates that Tinton Falls Defendants provided Plaintiff with chance after chance for Plaintiff to keep his job.[10]  Plaintiff has not set forth any argument or any reason why the process afforded him during his suspension was inadequate and violative of his rights due under the Fourteenth Amendment.  Accordingly, Tinton Falls Defendants' Motion for Summary Judgment is granted.

### E. Tinton Falls Defendants' Counterclaim

Finally, Tinton Falls moves for Summary Judgment on its counterclaim for reimbursement of Plaintiff's wages paid while he was under suspension.  The counterclaim arises under N.J.S.A. 40:14-149.3 which provides that "[i]f any municipal police officer is suspended with pay and is found guilty of the charges brought against him said police officer shall reimburse the municipality for all pay received by him during the suspension."  Plaintiff, as stated supra, has filed no opposition.

Here, Plaintiff was suspended with pay and was found guilty on March 9, 2006 before a municipal judge in Freehold, New Jersey.  On November 8, 2006, Plaintiff's convictions were affirmed by the New Jersey Superior Court, Monmouth County Vicinage and Plaintiff was

---

[10]For example, as stated supra, Plaintiff was given an opportunity to be reinstated upon a fitness for duty examination.  However, Plaintiff refused to comply.

ordered to forfeit his employment.  As such, N.J.S.A. 40:14-149.3 applies.  The statute mandates

that Plaintiff reimburse Tinton Falls for the pay he received during his suspension with pay.

Plaintiff was initially suspended with pay on August 17, 2004.  On September 18, 2004, Plaintiff

status was changed to suspended without pay until April 12, 2005 when Tinton Falls again

changed Plaintiff's status to suspended with pay.  On July 3, 2005, Plaintiff was placed on unpaid

Family and Medical Leave.  Thus, during these periods of on-again off-again suspension with

pay, Plaintiff was paid a total of $13,059.32.  Certification of Donna Huy, Exh. 1.  Accordingly,

the Court grants Tinton Falls' Motion for Summary Judgment on its counterclaim for the

aforementioned amount.

## III. CONCLUSION

For the foregoing reasons, State Defendants' Motion to Dismiss Plaintiff's deliberate

indifference claim is granted and its Motion to Dismiss Plaintiff's excessive force claim is

denied.  Further, the Tinton Falls Defendants' Motion for Summary Judgment is granted. In

addition, the Court grants the Tinton Falls' Motion for Summary Judgment on its Counterclaim

against Plaintiff. Finally, Plaintiff shall inform this Court within twenty days whether he wishes

to proceed with his remaining claim; otherwise his excessive force claim will be dismissed.


Dated: March 19, 2009                                    /s/ Freda L. Wolfson_____
                                                         **Freda L. Wolfson, U.S.D.J.**