**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| GARY S. WADE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| | : |
| STATE TROOPER MICHAEL COLANER,| : |
| in his official and personal capacity, | : |
| | : |
| Defendant. | : |

_____:

Civ. Action No.:  06-3715 (FLW)

**OPINION**

**WOLFSON, United States District Judge**:

In the instant application, Plaintiff Gary Wade ("Plaintiff") seeks, _inter alia_, $290,669.00 attorneys' fees and $6,684.74 in costs for his trial counsel, Thomas A. Cunniff, Esq., of the law firm Fox Rothschild, including associates assisting Mr. Cunniff (collectively, "Trial Counsel"), in connection with litigating this suit, wherein Plaintiff obtained a favorable jury verdict with respect to his Section 1983 claim against Defendant State Trooper Michael Colaner ("Defendant").  Additionally, Plaintiff seeks attorneys' fees for work performed by pre-trial counsel, Susan Chana Lask, Esq., and Michael V. Calabro, Esq. (collectively, "Pre-Trial Counsel"), in the amount of $116,830.00 and costs totaling $4,847.30.  These fees are sought in connection with Plaintiff having obtained prevailing party status in this civil rights case, in which fee shifting is specifically permitted.  The only issue on these motions is the amount of fees to be awarded.  For the reasons set forth in this Opinion, the Court will award Plaintiff's trial counsel $145,313.50 in attorneys' fees and $6,684.72 in costs.  In addition, the Court will award Pre-Trial Counsel $72,262.50 in attorneys' fees and $4,847.30 in costs.

## I. BACKGROUND

### A. Pre-Trial Representation[1]

In August 2005, Plaintiff met with Mr. Calabro, a New Jersey attorney, and requested that he represent Plaintiff in his suit against Defendant and his employer, the Tinton Falls Police Department, regarding his August 17, 2004 arrest and subsequent termination of his position as Detective.  Mr. Calabro then sought out Ms. Chana Lask, a New York attorney, to represent Plaintiff on his civil rights claim.  See Certification of Ms. Susan Chana Lask, Esq. at ¶ 2 ("Chana Lask Cert. at ¶ __.").  In September 2005, Plaintiff signed a retainer with Ms. Chana Lask in which he agreed to pay "legal services at the following rates:  Services of Michael V. Calabro, Esq., $350/hr; Services for Susan Chana Lask, Esq.: $500/hr."  Id. at ¶ 3.

After retaining counsel, in August 2006, Plaintiff brought this action against, inter alia, defendants Colaner and State Trooper David Ryan ("Ryan"), pursuant to 42 U.S.C. § 1983 for use of excessive force.  Plaintiff also named his former supervisor, Chief Turning, as well as the Borough of Tinton Falls (collectively, "Tinton Falls Defendants"), relating to Plaintiff's suspension from the Tinton Falls Police department ("Loudermill Claim").  From August 2006 through November 2007, Pre-Trial Counsel represented Plaintiff and handled all aspects of pre-trial ligation, including discovery.  In November 2007, Ms. Chana Lask and Mr. Calabro sought to withdraw as counsel and that request was granted by the Magistrate Judge.  See Court's Order dated November 5, 2007. Subsequently, after having failed to secure counsel, Plaintiff proceeded with his case pro se. Id. at ¶ 11.

Thereafter, defendants filed a series of dispositive motions.  After no opposition was received from Plaintiff, the Court considered the motions unopposed.  The Court granted the

---

[1]    The relevant underlying facts of this case are fully recounted in the Court's prior Opinions.

motions as to the Tinton Falls Defendants, and as such, dismissed all claims against them, including the <u>Loudermill</u> Claim. In addition, the Court dismissed Wade's claim for refusal to provide medical assistance, but denied the motions as to Plaintiff's claim for excessive force against Colaner and Ryan. The Court then denied the motion for reconsideration filed by Colaner and Ryan, which was also unopposed. Accordingly, the only issue for trial was the excessive force claim against these two troopers.

**B. *Pro Bono* Counsel**

After counsel for Defendant and Plaintiff, *pro se*, prepared and submitted a final joint pretrial order, the Court, on December 1, 2009, appointed Mr. Thomas A. Cunniff, Esq. ("Mr. Cunniff" or "Plaintiff's Counsel") of Fox Rothschild, LLP ("Fox Rothschild"), as *pro bono* counsel to represent Plaintiff for trial purposes. <u>See</u> Declaration of Thomas A. Cunniff, Esq. at ¶ 4 ("Cunniff Dec. at ¶ __"). Prior to trial, Mr. Cunniff reviewed the claims and Plaintiff's file, gathered missing information, and researched applicable case law. Specifically, this review included analysis of the parties' depositions and state court trial testimony – none of which had Mr. Cunniff participated in representing Plaintiff. <u>See</u> Gary S. Wade's Brief in Support of Motion for Award of Attorneys' Fees and Costs at 3 ("Wade Brief at __."); Cunniff Dec. at ¶ 14. Mr. Cunniff then worked with Defendant's Counsel to prepare a revised joint final pretrial order. In addition, Mr. Cunniff engaged in extensive pre-trial motion practice, both filing <u>in limine</u> motions and defending a motion for summary judgment, as well as <u>in limine</u> defense motions. <u>See</u> Cunniff Dec. at ¶ 24. Moreover, Plaintiff's Counsel attended settlement conferences facilitated by the Court. When no settlement could be reached, the parties proceeded to trial. <u>Id.</u> at ¶ 23. The jury trial lasted a period of five days. At the close of trial, the Court dismissed defendant Ryan from the case, and the jury rendered a favorable verdict for Plaintiff against

Colaner; the jury awarded Plaintiff $500,000 in compensatory damages and $4.5 million in punitive damages.

## II. DISCUSSION

### A. Plaintiff's *Pro Bono* Counsel

#### 1. Standard for Reasonable Attorney's Fee(s) Calculation

In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), the Supreme Court reaffirmed the "American Rule" which states that each party in a lawsuit, ordinarily, shall bear its own attorney's fees unless there is express statutory authorization to the contrary. Carving out an exception to this general rule, Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988[2], which authorizes the district courts to award a reasonable attorney's fee to the prevailing party in civil rights litigation. See Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (cited in Perdue v. Kenny A., --- U.S. ---- , ---- (2010), 130 S.Ct. 1662, 1671 (2010)). Section 1988 provides that a prevailing party in certain civil rights actions may recover "a reasonable attorney's fee as part of the costs." Perdue, 130 S.Ct. at 1671.[3] As the Supreme Court recently noted in Perdue, the statute "does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining fees was left for the courts." Id.

_____

[2]    Title 42 U.S.C. § 1988(b) provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .
> (Citations omitted).

[3]    There is no dispute that Plaintiff was the prevailing party after a jury trial, he is entitled to fees under the statute.

The lodestar standard for calculating attorney's fees was established by the Third Circuit in Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973).  This standard "achieved dominance in the federal courts" after the Supreme Court's decision in Hensley Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002).  Perdue, 130 S.Ct. at 1672.  "Since that time, '[t]he "lodestar" figure has . . . become the guiding light of . . . fee-shifting jurisprudence'." Id. (quoting Burlington v. Dague, 505 U.S. 557 (1992)).

While the lodestar method "is not perfect," the Supreme Court has found that "it has several important virtues."  Id.  First, in accordance with the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984).  Developed after hourly billing had become widespread among attorneys, see Gisbrecht, 535 U.S. at 801, the "lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue, 130 S.Ct. at 1672.  Second, the lodestar method is readily administrable.  See Dague, 505 U.S. at 566; see also Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 609 (2001).  Third, the lodestar calculation is "objective," Hensley, 535 U.S. at 433, and thus "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." Perdue, 130 S.Ct. at 1672.

Thus, a "reasonable fee" under the lodestar approach is one that is "sufficient to induce a capable attorney to undertake representation of a meritorious civil rights case."  Id.  ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys" (ellipsis, brackets, and internal quotation marks omitted)).  The Supreme Court has determined that the lodestar method yields a fee that is "presumptively

sufficient" to achieve this objective.  Id. at 1673.  Furthermore, the lodestar figure includes "most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee."  Id.  There are two components to the reasonable fee analysis:  the rate charged and the time expended.  The lodestar is the presumptively reasonable fee.  Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey, 297 F.3d 253, 265 n. 5 (3d Cir. 2002).

One step in calculating the lodestar is determining whether the number of hours expended were reasonable.  Any "hours that were not reasonably expended" must be excluded from the fee calculation.  Hensley, 461 U.S. at 434.  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary'."  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The court must also examine whether the requested hourly rate is reasonable. Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community.  Blum, 465 U.S. at 895; see also Rode, 892 F.2d at 1183.  "The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive."  Glass v. Snellbaker, No. 05-1971, 2008 WL 4416450, at *4 (D.N.J. Sept. 23, 2008) (quotations omitted); Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000).  However, the attorney's billing rate, while relevant, is not entirely dispositive.  See Public Interest Research Group of New Jersey v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995).

The party seeking attorney's fees bears the burden to prove the reasonableness of the fee request.[4]  Rode, 892 F.2d at 1183.  Courts may not make any findings of reasonableness based

---

[4]      In addition, L. Civ. R. 54.2(a) requires that the fee applicant submit an affidavit detailing: "(1) the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered; (2) a record of the dates of services rendered; (3) a description of the services rendered on each of such dates by each person

on a generalized sense of appropriateness, but must rely on the record.  Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 361 (3d Cir. 2001) (quotation omitted) (cited in KFC Corp. v. Maretha, Inc., No. 08-3154, 2010 WL 2771770, at * 3 (D.N.J. July 13, 2010)).  "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." S. D. Manville Bd. of Educ., 989 F. Supp. 649, 656 (D.N.J. 1998).   Moreover, normally, the current market rate is the rate at the time of the fee petition, not the rate when the services were performed.  See Lanni v. State of New Jersey, 259 F.3d 146, 149 (3d Cir. 2001)("To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed") (quoting Rendine v. Pantzer, 141 N.J. 292 (1995)); see Rode v. Dellarciprete, 892 F.2d 1177, 1188-89 (3d Cir. 1990)(describing petition based on current rates as premised on a theory of "delay compensation").  "A current market rate is exactly that--a reasonable rate based on the currently prevailing rates in the community for comparable legal services."  Lanni, 259 F.3d at 150.

Significantly, the Court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party.  Bell v. United Princeton Properties, Inc., 884 F.2d 713, 719 (3d Cir. 1989).   But once the opposing party has made a specific objection, the burden is on the plaintiff to justify the size and reasonableness of his / her request. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005).   In reviewing a fee application, a district court must conduct a "thorough and searching analysis" to identify the charges.  See Evans v. Port. Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001).

---

of that firm including the identity of the person rendering the service and a brief description of that person's professional experience; (4) the time spent in the rendering of each of such services; and (5) the normal billing rate for each of said persons for the type of work performed."

Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar.  Blum, 465 U.S. at 897.

### 2.  Hourly Rate

In the present case, Plaintiff's Counsel, Mr. Cunniff, requests $410 per hour rate and $210 and $240 per hour rates for his associates, Ms. Baer and Mr. Schramm, respectively. Defendant first argues that Plaintiff's lodestar calculation is "overstated insofar as it uses hourly rates that exceed the prevailing market rate . . . ."  Brief in Opposition to Plaintiff's Motion Seeking an Award of Fees and Costs Pursuant to 42 U.S.C. § 1988 at 2 ("Def. Opp. at __."). Defendant posits that a more reasonable rate for the legal services provided by Mr. Cunniff "would be in the range of $300 - $350, with the rates for the other attorneys working on the matter proportionately reduced as well."  Def. Opp. at 8.   Although Defendant criticizes Plaintiff's supporting evidence, Defendant does not supply fee data or other evidence to support his challenge of the hourly rates sought by Plaintiff.  Defendant reasons that while Mr. Cunniff "is an experienced litigator, and may command $410/hr. from his private corporate clients," Mr. Cunniff's hourly rate "exceeds prevailing market rates for representation of private citizens in personal injury or civil rights cases."  Def. Opp. at 9.  Furthermore, Defendant submits that while the "requested rate may be what Fox Rothschild charges clients such as Merck in complex commercial litigations . . . [the facts suggest] that a somewhat lower 'market rate' would be more appropriate for this case."  Id.

Missing in Defendant's challenge is evidence of what a more reasonable "lower 'market rate'" for this type of work is in New Jersey.  Defendant solely relies on three unpublished cases--Ellis v. Ethicon, No. 05-726, 2010 WL 715403 (D.N.J. Mar. 1, 2010), Glass v. Snellbaker, No. 05-1971, 2008 WL 4371760 (D.N.J. Sept. 17, 2008), and Pretlow v. Cumberland County Board

of Social Services, No. 04-2885, 2005 WL 3500028 (D.N.J. Dec. 20, 2005)--from this district. These cases, while related to fee structures within the district, do not support Defendant's contention that Plaintiff's Counsel, in this case, is only entitled to the fee amount approved by those courts.  Importantly, the hourly rates approved in those cases, albeit lower than the rate requested here, are limited to the facts and circumstances in each of those cases.  Indeed, the Third Circuit has declared that it is insufficient to merely contest the claimed hourly rate without supplying evidence; the challenger of the rate must submit "evidence of a different reasonable hourly rate."  Tenafly Eruv Ass'n v. Borough of Tenafly, 195 Fed. Appx. 93, 98 n. 4 (3d Cir. 2006).  Here, Defendant does not offer any certifications, or otherwise, to show that Plaintiff's Counsel is entitled to anything lower than his requested rate.

This Court now turns to whether Plaintiff's request for $410 per hour is reasonable.  The starting point for the Court in determining a reasonable rate is the experience of the attorneys. See Id. at 97.  Defendant does not dispute that Mr. Cunniff is an experienced litigator.  Indeed, Mr. Cunniff has practiced law in the State of New Jersey for fifteen years, and, prior to engaging in the private practice of law, served as a Law Clerk for the Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio.  Cunniff Dec. at ¶ 3.  Furthermore, he has represented numerous clients in both state and federal courts.  Id. at ¶¶ 4, 33.  The Court finds that with his extensive litigation experience, Mr. Cunniff can command the rate he seeks.

Next, to support that $410 is the prevailing market rate in this area, Plaintiff cites recent Third Circuit cases wherein the Circuit approved hourly fee arrangements in civil rights cases that exceed Mr. Cunniff's hourly rate.  For example, Plaintiff cites Jama v. Esmor Correction Services, Inc., 577 F.3d 169 (3d Cir. 2009), wherein the Circuit affirmed the district court's approval of rates of $600 (for work performed in 2007) for a partner with seventeen years of

9

experience in a case brought pursuant to the Religious Freedom Restoration Act, 42 U.S.C. § 2000; see also Tenafly Eruv Ass'n v. Borough of Tenafly, 195 Fed. Appx. 93, 97-98 (3d Cir. 2006) (approved rates for senior attorneys as high as $500 and $550 per hour for civil rights litigation).  While Plaintiff does not submit certifications of other attorneys to support that the rate he seeks comports with the prevailing market rate, Plaintiff's customary billing rate of $410 per hour serves as an indicator for this Court to find the rate to be reasonable.  See Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985) (an attorney's customary billing rate is the proper starting point in determining reasonableness of the hourly rate); Glass, 2008 WL 4416450 at *4; see also Lindy Bros., 487 F.2d at 169 ("A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys.").  In addition, Defendant has failed to establish that the hourly rate of $410 is unreasonable and as such, the Court approves this rate.

Finally, Defendant solely argues that the associates' hourly rate should be proportionally reduced if the Court finds Mr. Cunniff's rate unreasonable.  In that connection, because the Court finds Mr. Cunniff's hourly rate reasonable, the hourly rates for the associates will not be reduced.

### 3.  Hours Expended

Defendant next challenges Counsel's use of block billing; he relies on an out-of-circuit case, Association of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt, No. 04-3600, 2005 WL 3099592 (S.D.N.Y. Nov. 17, 2005), for the proposition that "Federal courts have frequently recognized, [that] 'block billing has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application'."  Def. Opp. at 9.  To the contrary, the Third Circuit does not find block billing inappropriate when determining the reasonableness of fees.

"Block billing is a time-keeping method by which each lawyer and legal assistant enters the total time daily spent working on a case, rather than itemizing the time expended on specific tasks." Brown v. City of Pittsburgh, No. 06-393, 2010 WL 2207935, at *8 n.12 (W.D. Pa. May 27, 2010) (quoting Welch v. Met Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007)).  In this circuit, "[b]lock billing is a common practice which itself saves time in that the attorney summarizes activities rather than detailing every task" and such billing will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed.  See United States of America ex rel. Doe v. Pa. Blue Shield, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999) (cited in U.S. v. NCH Corp. et. al., No. 98-5268, 2010 WL l 3703756, at *4 (D.N.J. Sept. 10, 2010)).  In Rode, the Third Circuit addressed the degree of specificity necessary for the party seeking attorney's fees.  The court explained that specificity should only be required to the extent necessary "to determine if the hours claimed are unreasonable for the work performed." Rode, 892 F.2d at 1190.  In that regard, "[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Id. (citing Lindy Bros., 487 F.2d at 167).

Here, the entries for Plaintiff's Counsel on each day are sufficiently specific for this Court to make a determination as to the reasonableness of hours expended and time allotted for the tasks performed.  While individual line item billing records are preferable, the total amount of time attributed to the block billings does not strike the Court as unreasonable or inconsistent with the time expended on the activities described in the entries.  As such, the Court rejects Defendant's contention that the use of block billing here is inappropriate.

Next, Defendant specifically challenges the amount of time allocated by Plaintiff's Counsel to (i) review and summarize transcripts; (ii) prepare the motions in limine; and (iii) draft

the pre-trial order.  The Court addresses these contentions below.

### a.    Review and Summarization of Transcripts

Plaintiff's Counsel expended a total of 53.3 hours to review and summarize deposition and municipal court transcripts.  While Defendant notes that only four depositions were taken in discovery, the municipal court transcript alone was 536 pages.  In addition, the deposition and grand jury testimony added another 875 pages for review, for a total of 1,411 pages.  See Gary S. Wade's Reply Brief in Further Support of His motion for Award of Attorney's Fees and Costs at 5 ("Plaintiff's Reply at __.").  Moreover, the summaries were prepared by an associate, at a far reduced rate, which reduced the total fee as such time was not billed at the partner rate of $410.00, but rather $250.00 per hour.  Importantly, Defendant concedes that such summarization of transcripts was appropriate.  See Def. Opp. at 10.  Thus, for purposes of preparing for motions and trial, this Court finds that the time spent by Plaintiff's Counsel to familiarize itself with the case history in a span of 53.3 hours is neither excessive nor unreasonable.

### b.    Preparation of Motions in Limine

Plaintiff's Counsel time sheets indicate that 71.1 hours were billed for time spent preparing and drafting Plaintiff's five motions in limine.  Defendant sought to introduce five items of evidence which Plaintiff's Counsel contended were inadmissible and prejudicial.  Plaintiff's Counsel raised these issues with Defendant, who in turn only withdrew one of those items; this withdrawal occurred after all five motions in limine – which were meritorious -- had been prepared.  Defendant argues that a thorough review of the motions show that the time spent was more than reasonably necessary as the motions could "have been consolidated into a single motion."  Def. Opp. at 11.  Other than Defendant's opinion on what is reasonable, he offers no other credible argument to suggest that the time spent preparing and drafting the motions in

<u>limine</u> were excessive.  Rather, the Court finds that 71.1 hours to draft five independent motions in <u>limine</u> is reasonable.

### c.        Preparation of Pre-Trial Order

Prior to Plaintiff's Counsel's *pro bono* assignment to the instant case, the parties--<u>pro se</u> Plaintiff and defense counsel--prepared and submitted a joint final pre-trial order to the Court. Upon assignment, Mr. Cunniff reviewed the joint pre-trial order and found that it was "replete with items of inadmissible evidence."  Furthermore, it became obvious to Counsel that the pre-trial order had been prepared by the defense in conjunction with a non-lawyer with no experience in legal matters.  <u>See</u> Cunniff Dec. at ¶¶ 15-17.  As a result, most sections of the pre-trial order required intense revision.  <u>Id.</u>  To do so, Plaintiff's Counsel reviewed the docket and the file in order to adequately assess the first Pre-Trial order.  <u>Id.</u>  In Defendant's response, counsel argues that while modifications were made to the pre-trial order, such modifications did not necessitate 27.9 hours of work plus an additional 24.2 hours of "time that has been block billed to it, along with other unrelated tasks."  Defendant's Opp. at 11.  Beyond that reasoning, Defendant does not cite any case law or present any evidence that would buttress his position that such time expended is beyond what is acceptable for such a task.  Considering that (1) Plaintiff's Counsel was newly appointed; (2) the files submitted by Ms. Chana Lask were incomplete; (3) Counsel was not the initial participant in drafting the pre-trial order; and (4) the legal importance of the final pretrial order, it is reasonable that additional time would be spent on reviewing and revising the order.  As such, the Court finds that it is indeed reasonable to expend 27.9 hours in modifying the pre-trial order and a portion of another 24.2 hours (part of block billing) reviewing the necessary materials.

Accordingly, having determined that Plaintiff Counsel's hourly rates and the number of

hours expended on litigating this case are reasonable, the lodestar calculation is reflected in the chart below:

| Attorney | Hourly Rate | Hours Expended | Costs | Total |
|---|---|---|---|---|
| Mr. Thomas Cunniff, Esq. | $410.00 | 207.5 | | $85,075.00 |
| Ms. Eliana T. Baer, Esq. | $215.00 | 274.70 | | $59,060.50 |
| Mr. Joseph Schramm, Esq. | $240.00 | 4.5 | | $1,080.00 |
| Ms. Hanley | $140.00 | 0.7 | | $98.00 |
| | | | $1,784.74 (expense total) | |
| | | | $4,900.00 (expert total) | |
| Total | | **487.4** | **$6,684.74** | **$145,313.50** |

### 4. Enhancement of Lodestar Figure

There is a "strong" presumption that the lodestar represents the "reasonable fee" for purposes of the ultimate fee award granted. <u>Perdue</u>, 130 S.Ct. at 1673. The Supreme Court, however, has recognized that in certain cases an enhancement of the loadstar amount is warranted, specifically where the lodestar "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." <u>Perdue</u>, 130 S.Ct. at 1673; <u>see also</u> <u>Blum</u>, 465 U.S. at 897. Thus, any contention that a fee determined by the lodestar calculus may not be enhanced has been explicitly rejected. <u>Perdue</u>, 130 S.Ct. at 1673. The circumstances that warrant an upward adjustment, however, are limited. <u>Blum</u>, 465 U.S. at 898. Enhancements are only awarded in "'rare,' and 'exceptional' circumstances." <u>Hensley</u>, 461 U.S. at 435. The burden rests on the fee applicant to prove, by a preponderance of the evidence, that an upward

adjustment is required to secure a reasonable fee.  Id.  The fee applicant must rely on "specific evidence" that will result in a calculation "that is objective and capable of being reviewed on appeal."  Perdue, 130 S.Ct. at 1673.

The Supreme Court has pronounced that the "lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee."  Delaware Valley I, supra, at 566, 106 S.Ct. 3088.  Moreover, the Court has held that an enhancement *may not* be awarded based on a factor that is subsumed in the lodestar calculation (emphasis added).  Burlington v. Dague, 505 U.S. 557, 562-63 (1992).  Thus, the Court has proclaimed that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors are "fully reflected in the number of billable hours recorded by counsel."  Blum, 465 U.S. at 898. Additionally, the Court has noted that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."  Delaware Valley I, supra, at 566; see also Perdue, 130 S.Ct. at 1673.

Here, Plaintiff requests an upward adjustment of the lodestar figure by a multiplier of 2.0. Plaintiff asserts that the multiplier is warranted based on the time and labor required to represent Mr. Wade and the exceptional quality of Counsel's representation and results.  To support his request, Plaintiff relies on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).   However, the Court has not found any authority within this district to support Plaintiff's reliance on the Johnson factors in determining fee enhancements.  Indeed, the Johnson factors were developed by the Fifth Circuit for purposes of calculating a *fee award*, not fee enhancements.  Perdue, 130 S.Ct. at 1671-72.  In fact, the Supreme Court has criticized this method because it "[gives] very little actual guidance to district

courts." Id. at 1672 (quotations and citations omitted).  Nevertheless, the Court will address each of Plaintiff's reasoning for a fee enhancement.

Plaintiff reasons that a fee enhancement is appropriate because of (1) the extensive time and labor required to prosecute the claims; (2) the novelty and difficulty of the issues involved in this case; (3) the high degree of skills required to perform the legal service properly; (4) the preclusion of other employment opportunities for Mr. Cunniff due to his acceptance of this *pro bono* assignment; (5) counsel's representation was on a contingent basis; (6) the ultimate favorable results obtained; and (7) the undesirability of this case.  See Wade Brief at 7 – 12.  In response, Defendant argues an enhancement is inappropriate as Plaintiff's Counsel was not retained by Plaintiff "in the ordinary course." Id. at 4.  Because Counsel represented Plaintiff *pro bono*, such assignments should "never occasion [monetary] windfalls" as such financial gain would "erode public confidence . . . in the assignment process." Id.  Furthermore, Defendant claims that the bases for Plaintiff's request are subsumed in the lodestar consideration.

### a.      The Time, Labor and Skill Required

Plaintiff argues that because the amount of attorney time and effort has been substantial and because the case involved contentious and complex issues regarding liability and damages, an enhancement is warranted.  As indicated earlier, the consideration of the time, labor and skill required to prosecute a case is subsumed in the lodestar calculation. Guarnieri v. Duryea Borough, 364 Fed. App.'s 749, 755 (3d Cir. 2010) ("the 'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (citations omitted); see Perdue, 130 S.Ct. at 1673.  As such, an enhancement based on these factors will not be

considered here as they were already utilized by the Court in determining the lodestar amount. See supra.  Moreover, Plaintiff has not shown that the time, skill and labor expended by his counsel are of such an exceptional nature that an enhancement would be justified.

### b.  Novelty and Difficulty of the Factual and Legal Issues

Plaintiff avers that the instant case presented both novel and difficult issues that required intense research and analysis by counsel.  Plaintiff cites the Court's Order (Docket No. 58) which stated that the instant cases involved "contentious issues" that required factual investigation and expert testimony.  Additionally, and in a conclusory and repetitive manner, Plaintiff claims that the complex issues involved "required the services of experienced counsel skilled in litigating and trying difficult cases."  Defendant correctly notes that Plaintiff does not identify which aspects of the case were either novel or complex.  Indeed, Plaintiff has neither specifically nor adequately justified an upward departure based on this factor, and the Court does not find the issues involved in the case were extraordinarily complex. Rather, while the case was factually intensive, it presented straightforward legal issues involving the use of excessive force by Defendant.

Moreover, in Perdue, the Supreme Court has maintained that, "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably are fully reflected in the numbers of billable hours recorded by counsel'." Perdue, 130 S.Ct. at 1673.  In that respect, because the Court finds that any challenging nature of the underlying case is fully reflected in the amount of billable hours expended by Plaintiff's Counsel, this basis does not warrant an enhancement.

### c.  Limitations on Plaintiff's Counsel's Ability to Work on Extraneous Firm Matters

Plaintiff asserts that the preclusion of employment on other billable firm matters due to

the time expenditure on the present case warrant an upward adjustment of the lodestar figure. Pointing to large-scale cases that Plaintiff's Counsel is actively engaged in, Plaintiff argues that counsel "had to rearrange assignments and involve additional lawyers . . . to comply with the deadline and allow him to conduct the trial." Id. at 9. Defendant challenges Plaintiff's contention by arguing that "time spent on one matter will always limit the amount of time an attorney can dedicate to other cases." While the Court acknowledges that internal arrangements were made in order for Plaintiff's Counsel to fully represent Mr. Wade and fulfill his *pro bono* assignment, such arrangements were not onerous. Plaintiff's Counsel has the benefit of a national firm that boasts a large number of professional talents. As such, the involvement in *pro bono* representation would not be as burdensome as a similar assignment made to, for example, a solo practitioner or small firm with limited staff. Indeed, while Plaintiff's Counsel had to rearrange his schedule, he did not cease representation of other matters because of the instant case. See Cunniff Dec. at ¶ 22. Consequently, an upward lodestar adjustment will not be granted upon such grounds.

### d.  Customary Fee and Whether the Fee is Fixed or Contingent

Plaintiff argues that he is entitled to an upward adjustment as, similar to cases taken on contingency basis, counsel risked non-payment. To support this assertion, Plaintiff cites the Supreme Court case of Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987) ("Delaware Valley II"), which held that contingent claims receive a premium risk of non-payment, and thus, in the absence of a contingency enhancement a plaintiff would experience substantial difficulty in obtaining counsel. Defendant challenges Plaintiff's assertion by claiming that the Supreme Court expressly prohibited consideration of contingency factors in City of Burlington v. Dague, 505 U.S. at 567 ("[W]e hold that enhancement of contingency is

18

not permitted under the fee-shifting statutes at issue").  At the outset, however, this Court finds Defendant's challenge misplaced.  The Supreme Court in Dague expressly rejected consideration of contingency enhancements in cases involving the Solid Waste Disposal Act, 42 U.S.C. § 6972(e) and the Federal Water Pollution Control Act, 33 U.S.C. § 1365(d).  The Court, however, did not limit contingency enhancements under § 1988.

Instead, contingency multipliers compensate counsel for the riskiness of undertaking the litigation.  Rode, 892 F.2d at 1184.  The burden is on the prevailing party to justify such an enhancement.  Id.  To meet this high burden, the prevailing party must make "substantial showings of fact, particularly concerning the local contingent fee market."  Cerva v. E.B.R. Enterprises, Inc., 740 F. Supp. 1099, 1106 (E.D. Pa. 1990) (cited in Dixon-Rollins v. Experian Information Solutions, Inc., No. 09-0646, 2010 WL 3734547 (E.D. Pa. Sept. 23, 2010)).  To obtain a contingency multiplier, the fee applicant must establish:  (1) how the market treats contingency fee cases as a class different from hourly fee cases, Delaware Valley II, 483 U.S. at 731; (2) the degree to which the relevant market compensates for contingency, id. at 733[5]; (3) that the amount determined by the market to compensate for contingency is not more than would be necessary to attract competent counsel both in the relevant market and in its case, id. at 731 n. 12, 733; and (4) "that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market'."  Id. at 733; see also Rode, 892 F.2d at 1184.

---

[5]      Such a showing may be made by "providing an economic study setting up how hourly rates relate to contingency compensation or provide a comprehensive market-based survey of local fee arrangements."  Blum, 829 F.2d at 379.

Plaintiff's reasoning fails to satisfy the standards enunciated in <u>Delaware Valley II</u>. Without citing to any concrete evidence, Plaintiff merely applies New Jersey Court Rule 1:12-7[6] which governs contingency fee arrangements in the State.  Using the rule as a guide, Plaintiff's Counsel calculates that a contingency fee charge in the present matter would total $1,141,666.60- -an amount "well in excess" of the lodestar figure.  <u>See</u> Wade Brief at 10.  The requested enhancement of $290,669.00 (the lodestar figure multiplied by the requested 2.0 enhancement), Plaintiff reasons, is "almost a 75% discount off of usual standard contingency fees in New Jersey."  <u>Id.</u>  While the Court acknowledges that such fee structures are available in New Jersey, Plaintiff fails to present any evidence that shows this is an appropriate contingency figure for the relevant market for this type of case.  Moreover, counsel agreed to take this case on a *pro bono* basis; such voluntary assignments inherently carry the risk of nonpayment.[7]  While Plaintiff faced difficulty in obtaining counsel, the availability of a contingency multiplier was certainly not an incentive for Fox Rothschild, or any other available firm, to accept the assignment as this assignment was on a *pro bono* basis.  Accordingly, Plaintiff fails to adequately establish with competent evidence that a contingency multiplier is warranted.

---

[6]     Under rule 1:12-7(a), the maximum allowable contingent fees are as follows:
      (1) 33 1/3 % on the first $500,000 recovered;
      (2) 30% on the next $500,000 recovered;
      (3) 25% on the next $500,000 recovered;
      (4) 20% on the next $500,000 recovered; and
      (5) on all amounts recovered in excess of the above, an attorney may make an application for reasonable fees in light of all the circumstances.  R. 1:21-7(c);(f).

[7]     *Pro bono publico* representation of litigants is a professional responsibility of members of the bar in New Jersey and elsewhere.  In <u>Mallard v. United States District Court</u>, 490 U.S. 296, 310 (1989), Justice Brennan wrote for the Court:  "[I]n a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills *pro bono publico* is manifest."  Thus, the Third Circuit encourages lawyers to volunteer for such service, and urge the district courts in this circuit to seek the cooperation of the bar in this regard.  <u>See</u> <u>Tabron v. Grace</u>, 6 F.3d 147, 157 (3d Cir. 1993).

**e.   The Work Performance of Plaintiff's Counsel**

Finally, Plaintiff's avers that an enhancement is warranted due to the exceptional quality of representation and results.   Specifically, Plaintiff claims that an enhancement is justified as counsel achieved "extremely favorable results . . . directly attributable to the performance and commitment of resources by counsel."   Wade Brief at 11.   Defendant argues that while Plaintiff's Counsel "performed his services admirably," his representation, albeit successful, does not justify the requested enhancement under Perdue.

A quality multiplier in the context of attorney performance is only applied in rare circumstances.   See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware I"), 478 U.S. 546, 566 (1986); Student Pub. Interest Research Grp., Inc. v. AT&T Bell Labs., 842 F.2d 1436, 1453 (3d Cir. 1988).   An attorney's skill is normally reflected in his or her hourly rate and accounted for in the lodestar.   Cerva, 740 F. Supp. at 1106.   In Perdue, the Supreme Court specifically delineated three circumstances in which "superior attorney performance is *not* adequately taken into account in the lodestar calculation."   Perdue, 130 S.Ct. at 1674 (emphasis added).   The "exceptional" circumstances the Supreme Court identified are the following:

> 1.     where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation;
>
> 2.     if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted;
>
> 3.     attorney's performance involves exceptional delay in payment of fees.

Id., at 1674-75.

As to the first circumstance, the fee applicant must demonstrate that the lodestar amount does not compensate counsel at the "true market value" for work performed in similar cases that

are not governed by a fee-shifting statute.  Id. at 1674.  For this Court to approve such a request under this circumstance, the adjustment must be based on "specific proof linking the attorney's ability to a prevailing market rate."  Id.  Plaintiff's application does not include certifications or other evidence that directly link counsel's performance to similar work.  Absent any proof, Counsel's skill and experience as an attorney were adequately accounted for in the lodestar calculation.  As such, the first circumstance is not present in the instant case.

This case also does not fit in the second circumstance.  The litigation was neither exceptionally protracted, nor did it require an outlay of expenses so extraordinary that enhancement would be warranted to reimburse Counsel.  Expenses incurred by Plaintiff's Counsel amounted to $6,684.74, a cost that is not unreasonably high in this type of litigation. Furthermore, Counsel did not represent Plaintiff for a prolonged period of time; the *pro bono* assignment lasted approximately nine months at the time the trial ended.  Consequently, the expenditure of time and financial resources in the present case does not rise to the level of "unusual cases" in which enhancement is generally reserved.  Id. at 1674.

Finally, the third circumstance is not found in the present case.  As noted by the Supreme Court, any attorney who expects compensation under § 1988 "presumably understands that payment of fees will generally not come until the end of the case, if at all."  Id. at 1675.  Thus, compensation for the delay is "generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value'."  Id. (internal quotations and citations omitted).  Again, Counsel has only been representing Plaintiff for nine month; this is hardly an exceptionally long period of time for which counsel had to wait for payment of fees.

In sum, although the Court commends Counsel for his willingness to represent Plaintiff *pro bono* and for the very competent services he provided, Counsel's representation did not rise

to a level which would justify an enhancement under the Supreme Court's guidelines.  Because the lodestar amount adequately compensates the results achieved by Counsel here, counsel's fees will not be enhanced.

**B.   Pre-Trial Representation**

Ms. Chana Lask requests $116,830.00 in attorney's fees for 219.2 hours worked on Plaintiff's case, and $4,847.30 in costs.  See Chana Lask Cert. at ¶¶ 3-4.  Mr. Calabro, request attorney's fees in the amount of $10,150.00 for 29 hours of billable time.  See Certification of Mr. Michael V. Calabro, Esq. at ¶ 3 ("Calabro Cert. at ¶ __.").  As previously discussed, in order to adequately determine the reasonableness of the requested fees, the Court must calculate the lodestar.   The lodestar amount will determine the prevailing market rate in the relevant community and whether the hours expended on any particular task were reasonable.  Pre-Trial Counsel has submitted a lengthy spreadsheet that documents the work performed by Ms. Chana Lask; the work completed by Mr. Calabro, however, is not listed on the spreadsheets.

As a preliminary matter, Defendant argues that the circumstances surrounding Pre-Trial Counsel's withdrawal from the case "militate" against awarding any fees for legal services.  See Def. Opp. at 4.  Specifically, Defendant argues that courts have recognized that fee awards are "inappropriate" in cases where the attorney has abandoned representation.  See Mammano v. Pittstown Co., 792 F.2d 1242, 1245 (4th Cir. 1986).  While such an assertion may be true, in the present case, however, Pre-Trial Counsel withdrew its representation upon discussion with the Court, and indeed, the Magistrate Judge granted the request to withdraw in an Order (Docket Entry #24).[8]  While Pre-Trial Counsel did not represent Plaintiff for the full duration of this case,

---

[8]      Ms. Chana Lask and Mr. Calabro both contend that they only withdrew as counsel "when communications broke down with Mr. Wade who contacted Defendants directly, and the Court confirmed to withdraw."  Pre-Trial Counsel's Brief at 6.

Counsel did not completely abandonment their representation.  As such, an outright denial of all requested fees is inappropriate.  The Court recognizes that Pre-Trial Counsel expended significant time and resources during the two-year period of representation.  Specifically, Pre-Trial Counsel handled all pre-trial litigation and discovery--interviewing clients; reviewing and digesting transcripts from Plaintiff's criminal trial; drafting the Complaint; reviewing and responding to Defendant's answers; serving discovery; and interviewing experts.  While Pre-Trial Counsel did not secure Plaintiff's ultimate relief in this case, the initial work performed by Pre-Trial Counsel will not be wholly discounted.  The Court next determines the lodestar amount.

### 1.  Mr. Calabro

Mr. Michael Calabro, seeks payment for twenty-nine hours of work performed. Specifically, Mr. Calabro seeks $10,150.00 ($350 hr x 29) in attorney's fees for his work.  His hours include, "reviewing legal documents drafted by Ms. Lask, conferences with Ms. Lask on some issues, reviewing case law, and providing research to Ms. Lask."  See Calabro Cert. at ¶ 5. Defendant argues that the only support provided by Mr. Calabro for such a request is his Certification; at no other point does Mr. Calabro provide detail of the work he performed for the case.  See Def. Opp. at 6.  As a result, Defendant submits that Mr. Calabro should not be entitled to any fees.

The Third Circuit has instructed that "in calculating the hours reasonably expended, the District Court 'should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  Loughner v. University of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001) (quoting Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188

(3d Cir. 1995) (internal citation omitted)); <u>Rode</u>, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably expended.").  Therefore, it is axiomatic that fee petitions should be reduced for inadequately documented hours.  <u>Loughner</u>, 260 F.3d at 178.

In the instant petition, Mr. Calabro bears the burden of showing that the fees requested are reasonable.   However, Mr. Calabro fails to sufficiently document his hours.  Based on his certification, it is entirely unclear as to what Mr. Calabro reviewed, the conferences attended, and the specific research performed in furtherance of Plaintiff's claims.  More importantly, Mr. Calabro did not oppose Defendant on this point and thus, failed to provide further support for his fee application.  Without any competent documentation, the Court does not have the appropriate evidence to evaluate the reasonableness of Mr. Calabro's fee request.  Accordingly, the Court will deny Mr. Calabro's fee in its entirety.

### 2.   Ms. Chana Lask

Ms. Chana Lask requests an hourly rate of $525.00--the rate she bills in New York at the time this application was filed.  Defendant argues that because Ms. Chana Lask has failed to provide any evidence as why Plaintiff went out of this jurisdiction to New York to retain her, Ms. Chana Lask's hourly rate should be in line with the rates applied to the work of Mr. Cunniff or Mr. Calabro.

A reasonable billing rate is calculated generally according to the prevailing market rates in the relevant community. <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 184 (3d Cir. 2001). The relevant community in this case is the situs of the litigation, i.e., Trenton, New Jersey. <u>See Interfaith Cmty. Org. v. Honeywell Int'l Inc.</u>, 426 F.3d 694, 704 (3d Cir. 2005) (applying "forum rate rule" where out-of-town lawyers receive "the hourly rate prevailing in the district where the litigation is lodged."); <u>In re Fine Paper Antitrust Litigation</u>, 751 F.2d 562, 590 (3d Cir. 1984)

(same).  However, since <u>Fine Paper</u>, the Third Circuit recognizes two exceptions to this rule: (1) "when the need for the special expertise of counsel from a distant district is shown," or (2) "when local counsel are unwilling to handle the case."  <u>Interfaith Comty</u>, 426 F.3d at 705.  In that connection, a court's decision that a party qualifies for one or both of the exceptions to the forum rate rule is a factual finding and the court must make those findings based upon the record. <u>Id.</u>

Ms. Chana Lask asserts in a conclusory manner that because the case involved "officers against officers" and there were criminal and disciplinary charges against Plaintiff, no other attorneys in New Jersey would take Plaintiff's case.  However, other than Ms. Chana Lask's assertion, she provides no detail of the efforts Plaintiff made to retain counsel locally.  In fact, Mr. Calabro, who contacted Ms. Chana Lask initially regarding representation, did not attest to Plaintiff's efforts.  Ms. Chana Lask also points to the fact that she unsuccessfully attempted to obtain substitute counsel at the time she withdrew representation because multiple attorneys refused to take the case.  Similarly, Ms. Chana Lask provides no detail as to extent and scope of her efforts in this regard, and indeed, there are no entries in her time sheets documenting such efforts.  Even more damning is the failure of Ms. Chana Lask to respond to Defendant's arguments.  Without any evidence, the Court cannot make the necessary factual findings required by the Third Circuit.  <u>See</u> <u>Interfaith Comty</u>, 426 F.3d at 707 (The Third Circuit affirmed district court's extensive finding, which was based on competent evidence, that no in-state attorneys would take the plaintiff's case).  As such, the Court resorts to finding a reasonable hourly rate for the prevalent market in this community, not New York.

The Court's analysis starts with Ms. Chana Lask's experience.  Ms. Chana Lask has been handling complex litigation and civil rights cases for twenty-one years, s<u>ee</u> Chana Lask Cert. at ¶

2; Pre-Trial Counsel's Brief at 5, and specifically, she has substantial experience litigating Section 1983 cases. Id. Defendant does not dispute the extent of Ms. Chana Lask's experience. In fact, Defendant asserts that Ms. Chana Lask's representation is comparable to that of Mr. Cunniff. As such, because of the reasons set forth *supra* regarding the reasonableness of Mr. Cunniff's rate, the Court finds $410 to be a reasonable hourly rate for Ms. Chana Lask.

Next, Defendant challenges various charges made by Pre-Trial Counsel in her fee application. Specifically, Defendant requests that the Court reduce the fee amount for activities involving the following: (1) the Loudermill claim; (2) media and public relations; (3) hours expended on Pre-Trial Counsel's motion to withdraw; (4) contacts with "confidential witnesses"; (5) unreasonable use of 15-minute billing increments; (6) administrative and clerical tasks; and (7) vague entries. The Court addresses each of Defendant's arguments below.

### a. **Loudermill Claim**

In addition to excluding the hours unreasonably expended on this litigation by Pre-Trial Counsel (discussed *infra*), courts must exclude those hours expended in pursuit of distinct claims on which a plaintiff was not successful. See Hensley, 461 U.S. at 434-35 (distinct unsuccessful claims not entitled to fee compensation). In that respect, an award of attorney's fees must be reduced to reflect the degree of success in this action in accordance with the principles articulated in Hensley v. Eckerhart. When a party's unsuccessful claims do not depend on the same factual and legal basis as its successful claims, the fee award should be limited to the work performed in furtherance of the successful claims. McKenna, 582 F.3d at 457-58. To make such a determination, the Third Circuit has found that "[t]he most critical factor is the degree of success obtained. In exercising its discretion in fixing the award, the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account

for the limited success." <u>Field v. Haddonfield Bd. of Educ.</u>, 769 F. Supp. 1313, 1322 (D.N.J.1991) (internal citations, quotations, and footnotes omitted); <u>see also</u> <u>Holmes v. Millcreek Twp. School Dist.</u>, 205 F.3d 583, 595-96 (3d Cir. 2000) (awarding one-fourth of fees where plaintiff prevailed on some but not all claims).  Here, Plaintiff's <u>Loudermill</u> Claim qualifies as an unsuccessful claim in which Pre-Trial Counsel cannot be compensated.  While the <u>Loudermill</u> claim arose out of Plaintiff's arrest, the <u>Loudermill</u> allegations clearly only relate to the Tinton Falls defendants and have no bearing on any factual underpinnings or legal theories of Plaintiff's excessive force claim.  Indeed, defendant Colaner played no role in the Tinton Falls defendants' decision-making regarding Plaintiff's employment status or entitlement to a hearing.  As such, the hours expended on litigating the <u>Loudermill</u> Claim are excluded from the lodestar calculation.

Recognizing this result, Ms. Chana Lask explains in her certification that Plaintiff has already paid the charges associated with the sixteen hours expended on the <u>Loudermill</u> Claim. <u>See</u> Chana Lask Cert. at ¶ 5.[9]  In reviewing the time sheets Ms. Chana Lask submitted, the activities related to the <u>Loudermill</u> Claim are intertwined with other billable assignments, and as such, it is difficult for the Court to make an independent assessment as to the portion of time billed related to the <u>Loudermill</u> Claim.  <u>See, e.g.</u>, Ms. Chana Lask's Time Sheet, entries for September 21 and 28, 2005; October 11 and 12, 2006; December 8 and 11, 2006; April 9, 22, and 23, 2006; July 30, 2006; March 13, 2007; April 2, 8, 9, 12 and 23, 2007.  The Court will rely on counsel's representation that 16 hours of billable time were spent on prosecuting the <u>Loudermill</u> Claim.  Accordingly, the Court will deduct 16 hours from the total hours of 219.2.

---

[9]      Ms. Chana Lask explains that she spent a total of sixteen hours on the <u>Loudermill</u> portion of the case.  In that connection, Ms. Chana Lask also attests that Plaintiff already had paid a total of $9,277.60 for the work performed in connection with that claim.  <u>Id.</u> at ¶ 5.  As such, in this application, Ms. Chana Lask deducted 16 hours of fees from the total fees requested.  <u>Id.</u>

### b.  Media and Public Relations

A careful review of Pre-Trial Counsel's billing records indicates approximately 8.75 hours expended on work relating to contacts with media and other public relation efforts.  See Chana-Lask Cert., entries dated December 4, 11, 12, 14, and 26, 2006; August 2007.  This Circuit has established that, "as a matter of law, this kind of activity attorneys generally do at their own expense." D.B. v. Bloom, 896 F. Supp. 166, 172 (D.N.J. 1995); see Halderman by Halderman v. Pennhust State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995)("the fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expense on an adversary under the guise of reimbursable legal fees . . . ."); Proffitt v. Municipal Auth. of Borough of Morrisville, 716 F. Supp. 845, 851 (E.D. Pa.1989), aff'd, 897 F.2d 523 (3d Cir. 1990).  Therefore, the Court will further reduce 8.75 hours from the total hours requested.

### c.  Motion to Withdraw as Plaintiff's Counsel

Pre-Trial Counsel's billing records also indicate approximately thirteen hours expended on work relating to her motion to withdraw as counsel.  See Chana Lask Cert. at entries dated October 17, 2007 through December 27, 2007.   Defendant argues that "as a matter of fundamental fairness" such costs should be excluded from the fee application as the work expended on the motion was not "undertaken in furtherance of plaintiff's claims." See Def. Opp. at 10.  This Court agrees.  The Supreme Court has held that work included in the calculation of fees must be of the type "ordinarily necessary" to secure final judgment.  See Webb v. Board of Ed. of Dyer County, 471 U.S. 234, 243 (1985).  Clearly, Pre-Trial Counsel's motion to withdraw was not made in furtherance of Plaintiff's claims.  As such, the Court will reduce 13.45 hours related to that motion.

#### d.  Contacts with Confidential Witnesses

Pre-Trial Counsel's billing records reflects contact with a "confidential witness."  <u>See</u> Chana Lask Cert. at entries dated December 12, 15, and 16, 2006.  The entries, including these references, total 3.5 hours.  Defendant contends, and this Court agrees, that there is no "principle of law that permits the designation of 'confidential' witnesses within the context of a civil rights litigation."   More importantly, Pre-Trial Counsel failed to provide any evidence that the information gathered from this "confidential witness" was necessary to prosecute Plaintiff's claim.  As such, the Court will deduct 3.5 hours related to this activity.

#### e.  Use of 15-Minute Billing Intervals

Pre-Trial Counsel's fee application reflects the use of 15-minute billing cycles.  While such billing methods are readily used among attorneys and firms, and generally accepted by courts when calculating fees, courts in this district have rejected the use of such billing increments where the fees have been unreasonably inflated as a result.  <u>See</u> <u>U.S. v. NCH Corp.</u>, No. 98-5268, 2010 WL 3703756, at *9 (D.N.J. Sept. 10, 2010); <u>Williams v. Sullivan</u>, No. 89-3285, 1991 WL 329581, at *2 (D.N.J. Feb. 7, 1991); <u>see e.g.</u>, <u>In re Jefsaba, Inc.</u>, 172 B.R. 786, 801 (Bankr. E.D. Pa. Sept. 29, 1994); <u>see generally</u> <u>In re Price</u>, 143 B.R. 190, 194 (Bankr. N.D. Ill. Jul. 15, 1992) (holding that billing in quarter hour increments "inherently inflates and distorts the time actually expended, and hence is unacceptable").  In the instant application, Defendant disputes .75 hour that was charged for leaving a recorded telephone message.  <u>See</u> Chana Lask Cert. at entries dated March 6, 2006, December 19, 2006 and July 11, 2007.  Furthermore, Defendants disputes an additional entry of .50 hour, which was assigned to the task of reviewing a telephone message and consequently leaving a message in response.  <u>Id.</u> at dated entry September 25, 2006.  The total number of hours disputed by Defendant in this context is

approximately 1.25 hours.  Indeed, Counsel has failed to establish with specificity that she spent the full amount of time billed on these activities.  As such, the Court finds that these activities are not compensable, and 1.25 hours will be deducted from lodestar calculation.  See EEOC v. Fed. Express Corp., 537 F. Supp. 2d 700, 724 (M.D.Pa. 2005) (time spent on placing unanswered calls is not compensable).  However, contrary to Defendant's request, time spent in reviewing e-mail messages and responding to a request for an extension of time -- which were necessary to prosecute the case -- will not be deducted by the Court.

### f.  Administrative and Clerical Tasks

Generally clerical work is not properly billed at the rate of a senior attorney.  Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995)(it is not appropriate to allow "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals"); Jordan v. CCH, Inc., 230 F. Supp. 2d 603, 612 (E.D. Pa. 2002)(excluding hours from fee petition that did not require attorney's legal knowledge or training).  While Ms. Chana Lask asserts that she does not seek fees performed by legal assistants, her time records illustrate tasks that could have been performed by her legal staff at a far reduced rate.  Tasks such as electronic filing; obtaining the addresses of defendants; organizing e-filings; and telephone calls to court reporting services could have been performed at a significantly reduced rate by less costly talent.  The Court's review of the time sheet exhibit, however, illustrates that such tasks are so intertwined with other billable tasks that deductions are difficult to make.  For example, Ms. Chana Lask's timesheet indicates that on September 21, 2006, the following tasks were performed during one billable hour:  "dnld compl, summons on ECFC; review C e-mails, obtain D   addresses,   draft   service   waivers,   mail   copies=4   Compls   x9x   .25=$9;   4 wvrsx2=8x2=16.25=$4;postage=$4;filing fee $350."  Similar entries made on April 9, May 22,

June 4, and July 7 of 2007 also include administrative tasks that were performed along with other billable assignments.  See entries April 9, 2006, May 22, 2007, June 4, 2007 and July 7, 2007. While delegation of such administrative tasks is reasonable, the instances of non-delegation are not frequent enough to mandate reducing the number of hours that will be computed in the lodestar.  See Poston, 577 F. Supp. at 920 ("The court will not reduce the number of hours worked on this basis for it finds that the hours of work that could have been effectively delegated are *de minimis*").   As such, Pre-Trial Counsel's fee application will not be reduced on this ground.

### g.  Vague Entries

Pre-Trial Counsel seeks reimbursement for certain items that either appear to be unrelated to the instant case, or are so vague that their relationship to the proceedings is indeterminable. Defendant argues that such entries are unreasonable and thus, are not compensable.  Specifically, Defendant challenges items such as "review file," "org file," and "review docs" (December 18, 2006; April 20 and 21, 2007; October 17, 2007), as well as an entry that was redacted (March 7, 2006).  Furthermore, Defendant highlights several telephone calls allegedly made to individuals without connection to the present case.  See Chana Last Cert. at entries dated December 18, 2006, June 12, 2007, June 21, 2007, July 2, 2007, and September 13, 2007.  After a thorough review, this Court agrees that such items are too vague to allow for fee reimbursement.  See, e.g., Loughner v. University of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001) (noting that a fee award should be reduced where "the fee petition inadequately documents the hours claimed" (citation omitted)); Powell v. SEPTA, No. 05-6769, 2007 WL 1795686 (E.D. Pa. June 18, 2007) ("Plaintiff's counsel is improperly seeking to recover attorney's fees for matters unrelated to this

litigation."). <u>Berne Corp. v. Government of Virgin Islands</u>, No. 2000-141, 2009 WL 2044623, at *3 (D.V.I. July 9, 2009).

Ms. Chana Lask provides no description for the Court to adequately assess that such review of documents and telephone conversations are relevant and necessary to prosecute this case. The entries, at best, indicate that she spoke with a particular person and that she reviewed documents and organized the file. Again, the Court notes that Counsel also failed to respond to Defendant's argument on this point. Without further information, it is not possible for the Court to determine whether such review and telephone calls were in furtherance of, or even relevant to, Plaintiff's case. Consequently, the Court will reduce two hours which reasonably reflect the time billed for these vague entries.

Since the Court has determined that the proper hourly rate for Ms. Chana Lask is $410 and the number of reasonable hours expended on this litigation is 176.25, the attorney's fees awarded to Ms. Chana Lask is $72,262.50. Moreover, because Defendant did not contest the costs requested by Pre-Trial Counsel, the Court will award Pre-Trial Counsel $4,847.30 in costs.

An appropriate order shall follow.


Date:  December 28, 2010


                                                            **/s/    Freda L. Wolfson**
                                                      The Honorable Freda L. Wolfson
                                                      United States District Judge